UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          CRIMINAL ACTION

VERSUS          NO. 19-60-WBV-KWR

IMAD FAIEZ HAMDAN, ET AL.          SECTION: D (4)

<u>ORDER AND REASONS</u>

Before the Court is a Motion to Dismiss Count 1 of the Indictment, filed by defendants, Imad Faiez Hamdan ("Hamdan") and Ziad Odea Mousa ("Mousa") (collectively, "Defendants").[1] The Government opposes the Motion,[2] and Defendants have filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion to Dismiss is **DENIED.**

## I. BACKGROUND

The defendants in this case, Hamdan and Mousa, owned and operated more than 30 food stores, convenience stores, and gas stations that operated under the name "Brothers Food Mart" in the State of Louisiana.[4] Defendants operated all of the locations of Brothers Food Mart under a central management system.[5] On October 10, 2019, the Government filed a 74-Count Superseding Indictment against Defendants.[6] Pertinent to the instant Motion, Defendants are charged in Count 1

---

[1] R. Doc. 62.
[2] R. Doc. 73.
[3] R. Doc. 81.
[4] R. Doc. 47 at ¶ 2; R. Doc. 60-1 at p. 2.
[5] R. Doc. 47 at ¶ 3; R. Doc. 60-1 at p. 2.
[6] R. Doc. 47.

with "Conspiracy to Harbor and Encourage and Induce Illegal Aliens."[7] Specifically, Count 1 charges Defendants with conspiracy to conceal, harbor and shield from detection, and attempt to conceal, harbor and shield from detection, illegal aliens by providing them with a means of financial support through employment at Brothers Food Mart stores in the Eastern District of Louisiana, in order to obtain a commercial advantage, all in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I) & § 1324(a)(1)(B)(i).[8]

On November 19, 2019, Defendants filed the instant Motion to Dismiss Count 1 of the Indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b).[9] The thrust of Defendants' argument is that Count 1 must be dismissed because: (1) the portion of 8 U.S.C. § 1324 criminalizing "encouraging and inducing" illegal aliens has been declared unconstitutional; and (2) allegations that Defendants knowingly employed illegal aliens is insufficient to state an offense for harboring illegal aliens. Defendants first argue that Count 1 must be dismissed because it charges Defendants with conspiracy to encourage and induce illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(iv), and on December 4, 2018, just four months before the return of the Superseding Indictment, the Ninth Circuit Court of Appeals declared that portion of the statute unconstitutionally overbroad in violation of the First Amendment.[10] Defendants argue that the Government's error in charging them

---

[7] *Id*. at p. 5.
[8] *Id*. at ¶¶ 23-39.
[9] R. Doc. 62.
[10] R. Doc. 62-1 at p. 2 (citing *United States v. Sineneng-Smith*, 910 F.3d 461, 467-68 (9th Cir. 2018), vacated and remanded sub nom., *United States v. Sineneng-Smith*, 140 S.Ct. 1575 (2020). While Defendants note in their Motion that the Supreme Court granted the Government's writ of certiorari on October 4, 2019 (R. Doc. 62-1 at p. 2 n.2), the Supreme Court issued a unanimous opinion on May

with that crime cannot be cured by striking the "Encourage and Induce" language from the Superseding Indictment because the inclusion of that language makes clear that the grand jury was improperly instructed on the applicable law and were instructed that it is a crime to encourage and induce an illegal alien to enter or reside in the United States.[11]   Because the Superseding Indictment unconstitutionally charges Defendants with conspiring "to Harbor and *Encourage and Induce* Illegal Aliens," Defendants argue Count 1 must be dismissed.[12]

Defendants next argue that knowing employment of illegal aliens, as alleged in the Superseding Indictment, does not constitute "harboring" under 8 U.S.C. § 1324(a)(1)(A)(iii).[13]   Defendants claim that Count 1 of the Superseding Indictment alleges that Defendants concealed, harbored, or sheltered aliens "by providing said aliens with a means of financial support through employment at Brothers Food Marts in the Eastern District of Louisiana."[14]   While conceding that Count 1 tracks the statutory language of 8 U.S.C. § 1324(a), Defendants assert that an indictment that tracts the statutory language is nonetheless invalid when "the statute omits an essential element of the offense."[15]   Defendants assert that there are four essential elements of harboring illegal aliens: (1) the alien entered or remained in the United States in violation of the law; (2) the defendant concealed, harbored, or sheltered the

---

7, 2020, vacating and remanding the Ninth Circuit's decision.  140 S.Ct. 1575 (2020).  The Court further notes that the submission date of the instant Motion was January 7, 2020.  *See* R. Doc. 62. Neither party sought to file a supplemental brief apprising the Court of the Supreme Court's May 7, 2020 decision.

[11] R. Doc. 62-1 at p. 3.
[12] *Id.* (emphasis in original).
[13] *Id.* at pp. 3-8.
[14] *Id.* at p. 4 (*quoting* R. Doc. 47 at ¶ 24) (internal quotation marks omitted).
[15] R. Doc. 62-1 at p. 4 (quoting *United States v. Cantu*, 557 F.2d 1173, 1177 (5th Cir. 1977)).

alien in the United States; (3) the defendant knew or recklessly disregarded that the alien entered or remained in the United States in violation of the law; and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States illegally.[16]  Defendants claim that the Fifth Circuit "interpret[s] the statutory phrase 'harbor, shield, or conceal' to imply that 'something is being hidden from detection.'" [17]  Defendants also rely upon Fifth Circuit precedent for the proposition that the offense of harboring aliens requires a level of knowledge and intent beyond the mere employment of illegal aliens.[18]  Thus, Defendants seem to suggest that the Superseding Indictment, while tracking the language of 8 U.S.C. § 1324(a)(1)(A)(iii), fails to allege that the Defendants actively concealed illegal aliens.

Defendants further argue that the allegations in the Superseding Indictment, that Defendants conspired to conceal, harbor or shelter illegal aliens by providing them with a means of financial support though employment at Brothers Food Mart stores, conflate the second and fourth elements of the offense under 8 U.S.C. § 1324(a)(1)(A)(iii).[19]  Defendants claim that while mere employment can satisfy the fourth element of "substantially facilitating" the alien remaining in the United States,[20] it does not satisfy the second element of "concealed, harbored, or sheltered the alien in the United States" because mere employment does not hide an alien from

---

[16] R. Doc. 62-1 at p. 4 (quoting *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005)) (internal quotation marks omitted).

[17] R. Doc. 62-1 at p. 3 (quoting *Villas at Parkside Partners v. City of Farmers Branch, Texas*, 726 F.3d 524, 529 (5th Cir. 2013)) (internal quotation marks omitted).

[18] R. Doc. 62-1 at pp. 4-5 (quoting *United States v Anderton*, 901 F.3d 278, 284 (5th Cir. 2018)) (quotation marks omitted).

[19] R. Doc. 62-1 at p. 5.

[20] *Id.* (citing *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007)).

detection by the government.[21]  Defendants argue that the manner and means of committing the conspiracy, as alleged in the Superseding Indictment, are nothing more than the steps taken by Defendants to employ illegal aliens.[22]  Defendants assert that the Superseding Indictment does not allege that Defendants created immigration documents, provided housing or transportation for illegal alien employees or warned illegal aliens of impending immigration inspections or law enforcement presence because Defendants did not do those things.  Defendants contend that such affirmative concealing conduct is the hallmark of harboring cases, and that the Superseding Indictment is devoid of any allegations of knowledge and intent beyond acts incidental to mere employment.[23]  Defendants then list all of the facts alleged in Count 1,[24] and assert that none of the allegations constitute concealing, harboring, or sheltering an illegal alien, which requires "something more than the acts incidental to mere employment."[25]  Because the Government does not allege, and cannot prove, any acts of concealing, harboring or sheltering an illegal alien, Defendants argue that the Superseding Indictment fails to state an offense for conspiracy to harbor illegal aliens and that Count 1 must be dismissed.

The Government opposes the Motion, arguing first that Count 1 of the Superseding Indictment does not allege a violation of 8 U.S.C. § 1324(a)(1)(A)(iv), the

---

[21] R. Doc. 62-1 at p. 5 (citing *Villas at Parkside Partners*, 726 F.3d at 529; *Hall v. Thomas*, 753 F. Supp. 2d 1113, 1160 (N.D. Ala. 2010); *Hager v. ABX Air, Inc.*, Civ. A. No. 2:07-cv-317, 2008 WL 819293, at *6 (S.D. Ohio Mar. 25, 2008); *Edwards v. Prime, Inc.*, Civ. A. No. 08-AR-1016-S, 2008 WL 9393800, at *5 (N.D. Ala. Dec. 11, 2008); *Brewer v. Salyer*, Civ. A. No. CV F 06-01324 AWI DLB, 2007 WL 1454276, at *10 (E.D. Cal. May 17, 2007)).
[22] R. Doc. 62-1 at p. 6.
[23] *Id.*
[24] *Id.* at pp. 6-7 (*quoting* R. Doc. 47 at ¶¶ 27-33, 35-39).
[25] R. Doc. 62-1 at pp. 7-8.

portion of the statute that the Ninth Circuit has declared unconstitutional.[26]  The Government asserts that Defendants' claim that the statute with which they have been charged is unconstitutional is a bold misstatement of the law, since Defendants were charged with violating 8 U.S.C. § 1324(a)(1)(A)(iii), which was not at issue in the Ninth Circuit case.[27]  The Government further argues that the reasoning in that case does not extend to the statutory provision at issue in this case, since the Ninth Circuit found that § 1324(a)(1)(A)(iv) was facially unconstitutional because it criminalized a substantial amount of protected expression.[28]  The Government asserts that concealing, harboring or shielding an alien from detention does not encompass protected speech, and that the Defendants' actions, as alleged in the Superseding Indictment, constituted more than speech.[29]  The Government further argues that Defendants' only complaint with the Superseding Indictment is the title of Count One, "Conspiracy to Harbor and Encourage and Induce Illegal Aliens."[30]  The Government claims the title is merely a descriptive phrase that refers to 8 U.S.C. § 1324, emphasizing that nowhere in the charging language itself does the Superseding Indictment refer to encouraging or inducing aliens to remain in the United States.  Thus, the Government argues that there is no support for Defendants' speculation that it is "clear" the grand jury was instructed improperly.[31]

---

[26] R. Doc. 73 at pp. 1-2.
[27] *Id.* at p. 2.
[28] *Id.* (citing *United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018)).
[29] R. Doc. 73 at p.3 (citations omitted).
[30] *Id.*
[31] *Id.* at p. 4.

The Government further asserts that the Superseding Indictment sufficiently alleges all of the elements of the offense charged under 8 U.S.C. § 1324(a)(1)(A)(iii). The Government claims that the elements of harboring an illegal alien in violation of 8 U.S.C. § 1324 are: (1) the alien entered or remained in the United States in violation of the law; (2) the defendant concealed, harbored or sheltered the alien in the United States; (3) the defendant knew or recklessly disregarded that the alien entered or remained in the United States in violation of the law; and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States illegally.[32] The Government claims that the Superseding Indictment addresses all of these elements and mirrors the elements outlined by the Fifth Circuit, with the exception of not specifically using the term "substantially facilitate." [33]   Nonetheless, the Government claims that, as Defendants admit, knowing employment constitutes substantial facilitation of an unlawful alien to remain in the United States. [34]

The Government disagrees with Defendants' claim that the Superseding Indictment conflates the second and fourth elements of the offense, asserting that employment and employment-related conduct can constitute concealing, harboring, or shielding illegal aliens. [35]   The Government asserts that the Superseding Indictment alleges acts of concealing, harboring and sheltering undocumented workers beyond solely employing them, including failing to complete required

---

[32] *Id*. at p. 4 (quoting *United States v. DeJesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005)) (internal quotation marks omitted).

[33] R. Doc. 73 at p. 5.

[34] *Id*. (citing *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007); *United States v. Louisiana Home Elevations, LLC*, Crim. A. No. 11-274, 2012 WL 1033619 (E.D. La. Mar. 27, 2012)).

[35] R. Doc. 73 at p. 5 (citing *Boyle v. United States*, 556 U.S. 938, 950 n.5, 129 S.Ct. 2237, 2246, 173 L.Ed.2d 1265 (2009)).

government forms to verify employees' work authorization status, paying workers in cash outside of the regular payroll system, filing false tax returns that do not report wages earned by undocumented workers, and keeping a second set of books that record cash wages.[36] The Government argues that all of these activities hid Brothers Food Mart's undocumented workers from detection by the government.[37] The Government asserts that Defendants' arguments that these actions are "steps taken to employ illegal aliens" is disingenuous.[38] The Government points out that the IRS has a process that allows all individuals to comply with federal tax laws, even those without proper work authorization. According to the Government, Defendants could have obtained Individual Taxpayer Identification Numbers ("ITINs") for their undocumented workers and reported their wages on the quarterly employment tax returns.[39] The Government claims that, despite receiving advice to follow that procedure, Defendants chose to file false tax returns to avoid disclosing to the IRS that they were employing undocumented workers.[40] The Government further asserts that by paying undocumented workers in cash and keeping those wages outside of the official books and records of Brothers Food Mart, Defendants obstructed the government from its ability to determine that anyone other than those on the formal payroll system was employed by Brothers Food Mart. Thus, the Government maintains that the Superseding Indictment sufficiently alleges a conspiracy to harbor

---

[36] R. Doc. 73 at p. 6.
[37] *Id.* (citing *Shum*, 496 F.3d at 392; *United States v. Kim*, 193 F.3d 567, 574-75 (2d Cir. 1999); *United States v. Ye*, 588 F.3d 411, 417 (7th Cir. 2009)).
[38] R. Doc. 73 at pp. 6-7.
[39] *Id.* at p. 7.
[40] *Id.*

illegal aliens. The Government claims that the cases cited by Defendants are distinguishable from this case.[41]

Finally, the Government asserts that the statutory history of 8 U.S.C. § 1324 shows that Congress intended for knowing employment of aliens to constitute harboring. The Government points out that, when the statute was enacted in 1952, it specifically stated that, "employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring."[42] Congress revised the statute in 1986, however, to eliminate that provision.[43] The Government argues that the removal of the proviso clause demonstrates congressional intent that employment of undocumented workers constitutes harboring under the statute.[44] The Government argues that Defendants' reliance upon the Fifth Circuit's decision in *Villa at Parkside Partners v. City of Farmers Branch, Texas*, is misdirected, as that case relies on a definition of "harboring" from a prior Fifth Circuit opinion that predates the 1986 statutory revision.[45] The Government urges the Court to conclude that employment of illegal aliens constitutes "harboring" under the new statutory language.

In response, Defendants maintain that binding Fifth Circuit precedent, cited in their Motion, establishes that mere employment does not constitute harboring and

---

[41] *Id.* at p. 7 n.2.

[42] *Id.* at p. 8 (*quoting* 8 U.S.C. § 1324(a) (1982)) (internal quotation marks omitted).

[43] R. Doc. 73 at p. 8 (*citing* The Immigration Reform and Control Act of 1986, Pub.L.No. 99-603, § 112(a), 100 Stat. 3359, 3381-82 (1986)).

[44] R. Doc. 73 at p. 8 (citing *United States v. Louisiana Home Elevations, LLC*, Crim. A. No. 11-274, 2012 WL 1033619 (E.D. La. Mar. 27, 2012)).

[45] R. Doc. 73 at p. 8 (citing *Villas at Parkside Partners v. City of Farmers Branch, Texas*, 726 F.3d 524 (2013)); *See United States v. Varkonyi*, 645 F.2d 453, 459 (5th Cir. 1981).

that the Government is conflating the separate issues of "substantially facilitate" aliens remaining in the United States and "conceal, harbor, and shield" the alien in the United States[46]  Defendants further assert that the Government has attempted to amend the Superseding Indictment by making a new factual allegation that Defendants had received "advice" to obtain ITINs for undocumented workers, but refused to do so to hide those workers from the Government.[47]  Defendants point out that the Superseding Indictment alleges that Defendants sought to conceal that they employed illegal aliens, not that Defendants sought to conceal the illegal aliens from the Government.  Defendants argue that, to constitute harboring, the Government must allege that the Defendants substantially prevented the illegal aliens from being apprehended by immigration authorities.[48]

Defendants assert that the Government's sole allegation that Defendants failed to provide "complete and accurate information to Homeland Security officials" in response to subpoenas is disingenuous, as the store owners from whom production was sought were represented by counsel and invoked their Fifth Amendment privilege against self-incrimination, in writing, and refused to produce lists of undocumented employees on that basis.[49]  Defendants claim that the refusal to

---

[46] R. Doc. 81 at pp. 1-4 (citing *United States v Anderton*, 901 F.3d 278, 284 (5th Cir. 2018) (quotation omitted); *Villas at Parkside Partners v. City of Farmers Branch, Texas*, 726 F.3d 524, 529 (2013)).
[47] R. Doc. 81 at p. 4 (*quoting* R. Doc. 73 at p. 7) (internal quotation marks omitted).
[48] R. Doc. 81 at p. 4 (quoting *DelRio-Mocci v. Connolly Properties, Inc.*, 672 F.3d 241, 248 (3d Cir. 2012)) (quotation marks omitted).
[49] R. Doc. 81 at p. 5 (*citing* R. Doc. 73 at p. 7).  The Court notes that Defendants also cite to "Exh. A, USAProduction-0067130, Production Letter," and assert in a footnote that, "The attached example is from Mr. Mousa's son, who is the owner of Brother's Terry Parkway.  Transmittal letters in the same form accompanied other productions for other stores."  R. Doc. 81 at p. 5 n.1.  There is no "Exhibit A" attached to either Defendants' Reply brief or their Motion to Dismiss.  *See* R. Docs. 62 & 81.

incriminate oneself cannot constitute an overt act in furtherance of a conspiracy, but do not cite any legal authority in support of their assertion.[50]  Defendants further assert that the cases cited by the Government for the proposition that the remaining allegations in the Superseding Indictment are sufficient to state a harboring offense all pre-date the Fifth Circuit's decision in *Villas at Parkside Partners*, where the Fifth Circuit concluded that mere employment does not constitute harboring.[51]  Finally, Defendants maintain that the heading of Count 1, charging Defendants with conspiring "to Harbor *and* Encourage and Induce Illegal Aliens" makes it unclear as to whether the grand jury was properly instructed regarding 8 U.S.C. § 1324(a)(1)(A)(iii), such that discovery of the legal instructions given to the grand jury concerning Count 1 is warranted.[52]

## II.    LEGAL STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure permits a defendant to raise by a pretrial motion, "Any defense, objection, or request that the court can determine without a trial on the merits."[53]  In the Motion to Dismiss, Defendants seek to dismiss Count 1 of the Superseding Indictment "for failure to state an offense," citing Fed. R. Crim. P. 12(b)(2) in support.[54]  Although not addressed by the Government, Rule 12(b)(2) provides that, "A motion that the court lacks jurisdiction

---

[50] R. Doc. 81 at p. 5.
[51] *Id.* (citing *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007); *United States v. Kim*, 193 F.3d 567, 574-75 (2d Cir. 1999); *United States v. Ye*, 588 F.3d 411, 417 (7th Cir. 2009)).
[52] R. Doc. 81 at p. 6 (*quoting* R. Doc. 47 at ¶ 24) (internal quotation marks omitted) (emphasis in original.
[53] Fed. R. Crim. P. 12(b)(1).
[54] R. Doc. 62 at p. 1.

may be made at any time while the case is pending."[55]  However, in the first sentence of their Memorandum in Support, Defendants assert that, "Whether an indictment sufficiently alleges the elements of an offense is a question of law properly raised by a motion to dismiss."[56]  Thus, Defendants appear to argue that Count 1 of the Superseding Indictment fails to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).

Federal Rule of Criminal Procedure 7(c) requires an indictment to contain "a plain, concise and definite written statement of the essential facts constituting the offense charged," and to state for each count, "the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to have violated."[57]  As explained by the Fifth Circuit, "Under the Sixth Amendment, an indictment must '(1) enumerate each prima facie element of the charged offense; (2) inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions.'"[58]  According to the Fifth Circuit, "[A]n indictment is sufficient if it 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend.'"[59]  "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges."[60]  "Generally, an

---

[55] Fed. R. Crim. P. 12(b)(2).

[56] R. Doc. 62-1 at p. 1 (*citing* Fed. R. Crim. P. 12(b); *United States v. Flores*, 404 F.3d 320, 323-26 (5th Cir. 2005); *United States v. Shelton*, 937 F.2d 140, 142 (5th Cir. 1991)).

[57] Fed. R. Crim. P. 7(c)(1).

[58] *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (quoting *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996)).

[59] *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *Unites States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)).

[60] *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978) (citations omitted).

indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged."[61]

When considering a motion to dismiss the indictment for failure to state an offense, a court is required to "take the allegations of the indictment as true and to determine whether an offense has been stated."[62]  Additionally, "A court must deny a motion to dismiss if the motion relies on disputed facts."[63]  According to the Fifth Circuit, "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . .  If a question of law is involved, then consideration of the motion is generally proper."[64]

## III.   ANALYSIS

### A.  Count 1: Conspiracy to Harbor, Conceal and Shield Illegal Aliens, in Violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I) and 8 U.S.C. § 1324(a)(1)(B)(i).

Defendants are charged in Count 1 of the Superseding Indictment with conspiracy to harbor, conceal and shield illegal aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I) and 8 § U.S.C. 1324(a)(1)(B)(i).[65]  Sections

---

[61] *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal quotation marks and citations omitted); *See United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017) (same).

[62] *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)) (internal quotation marks omitted).

[63] *USPlabs, LLC*, 338 F. Supp. 3d at 557; *See United States v. Covington,* 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969) (holding that a court can resolve a pretrial motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense").

[64] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

[65] R. Doc. 47 at ¶¶ 23-39.

1324(a)(1)(A)(iii) and (v)(I) provide, in pertinent part, that:

> Any person who – knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation . . . or engages in any conspiracy to commit any of the preceding acts . . . shall be punished as provided in subparagraph (B).

Section 1324(a)(1)(B)(i) sets forth the following penalties for violating § 1324(a)(1)(A):

> A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs – in the case of a violation of subparagraph (A)(i) or (v)(I) or in the case of a violation of subparagraph A(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under Title 18, imprisoned no more than 10 years, or both; . . . .

Thus, to establish a violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(I), harboring illegal aliens, the Government must allege and prove beyond a reasonable doubt the following four elements: (1) the alien entered or remained in the United States in violation of the law; (2) the defendant concealed, harbored, or sheltered the alien in the United States; (3) the defendant knew or recklessly disregarded that the alien entered or remained in the United States in violation of the law; and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States Illegally.[66] The parties agree that these are the four essential elements of the offense of harboring illegal aliens.[67]

---

[66] *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005).
[67] *See* R. Doc. 62-1 at p. 4; R. Doc. 73 at p. 4.

In the Superseding Indictment, the Government alleges the following:

> Beginning at a time unknown to the Grand Jury, but no later than July 2009, and continuing through the date of this Indictment, within the Eastern District of Louisiana and elsewhere, defendants **IMAD HAMDAN** and **ZIAD MOUSA**, and others, both known and unknown to the Grand Jury, knowing and in reckless disregard of the fact that aliens had come to, entered, and remained in the United States in violation of law, did knowingly and intentionally combine, conspire, confederate and agree with each other to conceal, harbor, and shield from detection and attempt to conceal, harbor, and shield said aliens from detection by providing said aliens with a means of financial support through employment at Brothers Food Marts in the Eastern District of Louisiana, said violation having been committed for the purpose of commercial advantage or private financial gain.[68]

The Superseding Indictment alleges that Defendants carried out the conspiracy by encouraging and permitting managers of Brothers Food Mart to hire undocumented workers, who were not authorized to work in the United States.[69] The Superseding Indictment alleges that Defendants did not require undocumented workers to complete an application with the central office of Brothers Food Mart, nor did Defendants require managers to collect documentation to determine an undocumented worker's immigration status.[70] The Superseding Indictment also alleges that Defendants did not require Brothers Food Mart to complete Forms I-9 for undocumented workers, and that Hamdan did not submit the names and personal information of undocumented workers for review in E-Verify, a web-based system that allows enrolled employers to confirm the eligibility of their employees to work in

---

[68] R. Doc. 47 at ¶ 24.
[69] *Id.* at ¶ 27.
[70] *Id.* at ¶ 28.

the United States.[71]  The Superseding Indictment further alleges that Defendants set parameters for the employment of undocumented workers, including their wage rate, and that Defendants directed Brothers Food Mart managers to pay undocumented workers in cash and to record the cash payments outside of the regular payroll system. [72]  The Superseding Indictment alleges that Defendants directed an individual to go to Brothers Food Mart locations on a weekly basis and collect the handwritten wage reports created by the managers, and that the individual used the information to create a separate set of books from those created by the central office of Brothers Food Mart.[73]

The Government further asserts in the Superseding Indictment that Defendants committed several overt acts in furtherance of the conspiracy to conceal, harbor and shield illegal aliens from detection under 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(I). [74]  The Government alleges that Defendants authorized the managers at Brothers Food Mart stores throughout the New Orleans area to employ persons illegally present in the United States, and authorized the continuing employment of those undocumented workers, thereby enabling them to remain in the United States.[75]  The Government also alleges that, to further conceal the illegal aliens, Defendants did not require the managers at the Brothers Food Mart stores, or any

---

[71] *Id*. at ¶¶ 29 & 30.
[72] *Id*. at ¶¶ 31 & 32.
[73] *Id*. at ¶ 33.
[74] *Id*. at ¶¶ 34-39.
[75] *Id*. at ¶¶ 35 & 36.

other Brothers Food Mart employees, to withhold federal or state income taxes from the cash wages paid to the undocumented workers.[76]

Taking the allegations of the Superseding Indictment as true, as the Court is required to do,[77] the Court finds that Count 1 sufficiently states the four essential elements of an offense under 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(I), conspiracy to harbor illegal aliens. Tracking the language of the statute, the Superseding Indictment sufficiently states the first three essential elements of the offense by alleging that Defendants, knowing and in reckless disregard of the fact that aliens had come to, entered, and remained in the United States in violation of the law, knowingly conspired to conceal, harbor and shield aliens from detection, and attempted to conceal, harbor and shield said aliens from detection, by providing them with a means of financial support, in order to obtain a commercial advantage or private financial gain.[78] In fact, Defendants concede that Count 1 of the Superseding Indictment tracks the statutory language of 8 U.S.C. § 1324(a)(1)(A)(iii).[79] The fact that the Superseding Indictment does not allege that Defendants' conduct tended to "substantially facilitate" the aliens remaining in the United States illegally does not render the Superseding Indictment deficient. As Defendants acknowledge in their Motion, knowing employment of an illegal alien satisfies the fourth element of the offense by "substantially facilitating" the alien remaining in the United States.[80]

---

[76] Id. at ¶ 37.

[77] United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011); United States v. Kay, 359 F.3d 738, 742 (5th Cir. 2004) (quoting United States v. Hogue, 132 F.3d 1087, 1089 (5th Cir. 1998)) (internal quotation marks omitted).

[78] R. Doc. 47 at ¶ 24.

[79] R. Doc. 62-1 at p. 4.

[80] Id. at p. 5 (citing United States v. Shum, 496 F.3d 390, 392 (5th Cir. 2007)).

Because Count 1 of the Superseding Indictment alleges facts that comprise the essential elements of the offense charged, 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I) and 8 U.S.C. § 1324(a)(1)(B)(i),  Count 1 of the Superseding Indictment states an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).

The Court rejects Defendants' argument that Count 1 must be dismissed because it only alleges knowing employment of illegal aliens, which is not sufficient to state an offense for harboring an illegal alien under 8 U.S.C. § 1324(a)(1)(A)(iii). The Court recognizes that the Fifth Circuit has indicated that mere employment of an illegal alien is not sufficient to constitute illegal harboring under 8 U.S.C. § 1324(a)(1)(A)(iii).[81]  The Fifth Circuit has also explained that, "In enacting [8 U.S.C. § 1324(a)(1)(A)(iii)], Congress 'intended to broadly proscribe any knowing or willful conduct fairly within any of these terms that tends to substantially facilitate an alien's remaining in the United States illegally . . . .'"[82]  As Defendants correctly point out, the Fifth Circuit has "interpreted the statutory phrase 'harbor, shield, or conceal' to imply that 'something is being hidden from detection.'"[83]  Contrary to Defendants' position, however, the Court finds that the Superseding Indictment alleges more than just mere employment of illegal aliens by Defendants.

---

[81] *See United States v. Anderton*, 901 F.3d 278, 284 (5th Cir. 2018) (where defendant was charged with encouraging or inducing an alien to come to, enter, or reside in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), but "likens his situation to cases in which other provisions of Section 1324 have been construed to require the defendant's active concealment of illegal aliens' status.  *See, e.g., United States v. Varkonyi*, 645 F.2d 453, 459 (5th Cir. 1981) (illegal harboring does not include 'mere employment')").

[82] *Villas at Parkside Partners v. City of Farmers Branch Texas*, 726 F.3d 524, 529 (5th Cir. 2013) (quoting *United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1073 n.5 (5th Cir. 1982)).

[83] *Villas at Parkside Partners*, 726 F.3d. at 529 (quoting *Varkonyi*, 645 F.2d at 459); *See Cruz v. Abbott*, 849 F.3d 594, 600 (5th Cir. 2017) (same).

Specifically, and as previously mentioned, the Superseding Indictment alleges that Defendants authorized the employment of undocumented workers by Brothers Food Mart managers, did not require Brothers Food Mart to complete Forms I-9 for undocumented workers, and directed Brothers Food Mart managers to pay undocumented workers in cash and to record the cash payments outside of the regular payroll system.[84]  The Superseding Indictment also alleges that Defendants directed an individual to collect the handwritten wage reports created by Brothers Food Mart managers on a weekly basis, and that Defendants directed that individual to create a separate set of books from those of the Brothers Food Mart central office.[85]  The Superseding Indictment further alleges that Defendants did not require the Brothers Food Mart managers to withhold federal or state income taxes from the cash wages paid to the illegal aliens, that Defendants did not report wages paid to undocumented workers on IRS Forms 941, and that Defendants failed to provide complete and accurate information in response to Notices of Inspection from the Department of Homeland Security.[86]  The Court finds that these actions amount to more than "mere employment" of illegal aliens, and constitute actions taken by Defendants to harbor or conceal the illegal aliens from detection by the United States Government.[87]

---

[84] R. Doc. 47 at ¶¶ 27, 29, 32 & 35.

[85] *Id*. at ¶ 33.

[86] *Id*. at ¶¶ 37-39.

[87] *See Varkonyi*, 645 F.2d at 459 (finding the defendant's actions went beyond mere employment and constituted harboring where defendant knew of the aliens' undocumented status, defendant had instructed the aliens on avoiding detection on a prior occasion, defendant was providing the aliens with employment and lodging while unlawfully in the United States, defendant had forcibly interfered with INS agents to protect the aliens from apprehension, and defendant was partly responsible for the subsequent escape of one alien in INS custody); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007) (affirming conviction of conspiracy to conceal, harbor or shield aliens and concluding that, "In sum, there is ample evidence that Shum provided aliens with employment in the United States and took steps that would shield their identities from detection by the government," including making and

The Court further finds the facts of this case distinguishable from the Fifth Circuit cases cited by Defendants for the proposition that mere employment and employment-related activities are insufficient for the crime of harboring illegal aliens. In *United States v. Anderton*, for instance, the defendant was charged with conspiracy to encourage and induce an alien to reside in the United States illegally, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), and the Court concluded that the offense requires "a level of knowledge and intent beyond the mere employment of illegal aliens."[88] Thus, *Anderton* addressed a section of the statute not at issue in this case. The *Anderton* Court acknowledged, in passing, that the Court had previously concluded that furnishing housing, without more, does not constitute illegal harboring under 8 U.S.C. § 1324(a).[89] The instant case does not involve allegations that Defendants furnished housing for illegal aliens. Further, in *Villas at Parkside*

---

providing the aliens with false identifications to facilitate the background check required to clean government buildings and not filing social security paperwork on the aliens); *Varela v. Gonzales*, Civ. A. No. 3:13-CV-1278-B, 2013 WL 5658606, at \*7 (N.D. Tex. Oct. 17, 2013) (citing *Villas at Parkside Partners*, 726 F.3d. at 529, and *Varkonyi*, 645 F.2d at 459, and concluding that, "Here, Plaintiffs' allegations that Defendants hire illegal workers and then hire legal workers to drive them around and avoid detection are enough to establish that defendants harbored illegal workers."); *See also United States v. Ye*, 588 F.3d 411 (7th Cir. 2009) (finding sufficient evidence established that defendant intended to prevent government from detecting illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(iii), where defendant admitted that, as part-owner and manager of restaurant, he knew illegal aliens worked for him, he did not require the illegal aliens to fill out job applications, tax forms or other employment documents, he only completed I-9 Forms for legal employees, he did not keep time cards for his illegal employees, he leased apartments for the illegal aliens, paid the illegal aliens in cash, and did not report the wages paid to illegal aliens to state authorities); *United States v. Kim*, 193 F.3d 567, 574-75 (2d Cir. 1999) (affirming conviction for harboring illegal aliens, and finding sufficient evidence for harboring conviction where defendant took steps designed to help the alien remain in his employ, undetected by the INS).

[88] 901 F.3d 278, 284 (5th Cir. 2018) (quoting *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007)) (internal quotation marks omitted).

[89] *Anderton*, 901 F.3d at 284 (citing *Villas at Parkside Partners v. City of Farmers Branch, Texas*, 726 F.3d 524, 529-30 (5th Cir. 2013); *DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 248-50 (3rd Cir. 2012)). *See also Cruz v. Abbott*, 849 F.3d 594, 600 n.11 (5th Cir. 2017) (noting that § 1324(a)(1)(A)(iii) prohibits "hiding aliens from authorities rather than as a prohibition against housing them.").

*Partners v. City of Farmers Branch, Texas*, the issue before the Court was whether a city ordinance regarding rental housing was preempted by federal immigration laws, including 8 U.S.C. § 1324.[90]  In reference to § 1324, the *Villas* Court acknowledged that, "we have interpreted the statutory phrase 'harbor, shield, or conceal' to imply that 'something is being hidden from detection.'"[91]  The Fifth Circuit further noted that, "We have held that harboring requires making a non-citizen's illegal presence in the United States 'substantially easier or less difficult.'"[92]  The Court finds that the allegations in Count 1 of the Superseding Indictment, that Defendants "to further conceal" the illegal aliens, did not require Brothers Food Mart managers or other employees to withhold federal or state income taxes from the cash wages paid to undocumented workers, did not report wages paid to undocumented workers on IRS Forms 941 and failed to provide complete and accurate information in response to Notices of Inspection from the Department of Homeland Security,[93] were actions taken to conceal the undocumented workers from detection, thus making it substantially easier for the undocumented workers to remain in the United States. Accordingly, Count 1 of the Superseding Indictment states an offense under 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I), and Defendants' Motion to Dismiss under Fed. R. Crim. P. 12(b)(3)(B)(v) must be denied.

The Court further rejects Defendants' argument that Count 1 must  be dismissed because the Superseding Indictment charges them with conspiracy to

---

[90] 726 F.3d 524.
[91] *Id.* at 529 (quoting *United States v. Varkonyi*, 645 F.2d 453, 459 (5th Cir. 1981)).
[92] 726 F.3d at 529 n.5 (citations omitted).
[93] R. Doc. 47 at ¶¶ 37-39.

"encourage and induce" aliens to enter or reside in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), a provision that was recently declared unconstitutional by the Ninth Circuit.[94] As an initial matter, it is clear from the charging language of the Superseding Indictment that although the heading of Count 1 states "Conspiracy to Harbor and Encourage and Induce Illegal Aliens," Defendants are actually charged in Count 1 with conspiracy to "conceal, harbor, and shield from detection and attempt to conceal, harbor, and shield said aliens from detection," in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I).[95] Moreover, as previously noted,[96] the Supreme Court recently vacated and remanded the Ninth Circuit's decision cited by Defendants, concluding that the Ninth Circuit "departed so drastically from the principle of party presentation as to constitute an abuse of discretion."[97] Thus, Defendants' argument on this issue is baseless.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Count 1 of the Indictment[98] is **DENIED.**

New Orleans, Louisiana, June 12, 2020.

**WENDY B. VITTER**
**United States District Judge**

---

[94] R. Doc. 62-1 at pp. 2-3 (citing *United States v. Sineneng-Smith*, 910 F.3d 461, 467-68 (9th Cir. 2018)).
[95] R. Doc. 47 at ¶ 24.
[96] *See* note 10, *supra.*
[97] *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1578 (2020).
[98] R. Doc. 62.