# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 19-60-WBV-KWR** |
| **IMAD FAIEZ HAMDAN, ET AL.** | **SECTION: D (4)** |

## <u>ORDER AND REASONS</u>

Before the Court is Defendants' Joint Motion to Suppress Evidence Obtained in Violation of the Attorney-Client Privilege and for an Evidentiary Hearing.[1]  The Government opposes the Motion.[2]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial economy, and because the factual background of this case has been extensively detailed in prior orders,[3] the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

The defendants in this case, Imad Faiez Hamdan ("Hamdan") and Ziad Odeh Mousa ("Mousa") (collectively, "Defendants"), owned and operated more than 30 food stores, convenience stores, and gas stations that operated under the name "Brothers Food Mart" in the State of Louisiana.[4]  Defendants operated all of the locations of Brothers Food Mart under a central management system.[5]  On October 10, 2019, the

---

[1] R. Doc. 159.
[2] R. Doc. 174.
[3] *See, generally,* R. Docs. 221, 222, 224, 229, 232, 233, 236.
[4] R. Doc. 47 at ¶ 2.
[5] *Id.* at ¶ 3.

Government filed a 74-Count Superseding Indictment against Defendants, charging Defendants with, among other things, conspiracy to harbor illegal aliens, conspiracy to commit tax fraud, and mail fraud.[6]

On March 1, 2020, Defendants filed the instant Motion, asking the Court to suppress information obtained by the Government from the former Chief Financial Officer at Brothers Food Mart, David Terrebonne, because it was obtained in violation of the attorney-client and work product privileges.[7]   Defendants allege that government agents and attorneys interviewed Terrebonne several times during the investigation of this case, and discussed a meeting Terrebonne attended while employed at Brothers Food Mart.[8]  Defendants claim the meeting concerned Brothers Food Mart's "efforts to address theft by two store managers and to take legal action against those managers."[9]   Defendants contend that the meeting was privileged because Brothers Food Mart's outside counsel was present.[10]   Defendants point to four memoranda of interview produced by the Government in discovery, which show the Government interviewed Terrebonne on October 19, 2016, August 15, 2018, October 4, 2018 and October 9, 2018.[11]  Defendants point out that the first three interviews were conducted by agents, but that government attorneys participated in the fourth interview.

---

[6] *Id.* at ¶¶ 23-39, 56-69.
[7] R. Doc. 159.
[8] R. Doc. 159-1 at p. 1.
[9] *Id.*
[10] *Id.*
[11] *Id.* at p. 2 (*citing* R. Doc. 159-2).

According to Defendants, the October 19, 2016 memorandum of interview states that Terrebonne attended a meeting with Hamdan, Mousa, Brothers Food Mart's CPA, Jim Butler, and Brothers Food Mart's counsel, Joe Dirosa, concerning the theft by two store managers, Tony and Ricky. Defendants assert that Terrebonne was asked about the meeting during the first interview, and that he was asked about the meeting and his work to assist with the "case" against the two managers during each subsequent interview.[12] Defendants claim that in the subsequent interviews, government agents questioned Terrebonne about "work papers that he prepared to determine and prove up the amount of money those managers stole from the stores," and that Terrebonne "prepared those work papers to help pursue civil or criminal litigation against those managers."[13] Defendants assert that Terrebonne turned over his "work papers" in response to questions about them from government agents and attorneys.[14]

Defendants contend that each of the interviews breached Brothers Food Mart's attorney-client and work product privilege.[15] Defendants assert that the October 19, 2016 memorandum of interview provides "prima facie evidence that the communications at the meeting were privileged and that Terrebonne's calculations were done in anticipation of litigation for use in bringing a civil case or in support of a criminal complaint."[16] Defendants argue that the attorney-client privilege applies

---

[12] R. Doc. 159-1 at pp. 2-3.
[13] *Id*. at p. 3.
[14] *Id*.
[15] *Id*. at p. 4.
[16] *Id*. at p. 5.

because: (1) Brothers Food Mart's counsel was present at the meeting and acting in that role; (2) the purpose of the meeting was for Brother's Food Mart management to discuss a theft case against two store managers; (3) the meeting was within the scope of Terrebonne's employment because it concerned Brothers Food Mart's business; and (4) Terrebonne knew the purpose of the communications was to procure legal advice related to the theft case.[17]   Defendants assert that Terrebonne's "work papers" are protected by the attorney work product doctrine because he prepared them at the direction of Brothers Food Mart's counsel.[18]   Defendants further assert that Terrebonne lacked the authority to waive these privileges on behalf of Brothers Food Mart.  Because the Government obtained information in violation of the attorney-client and work product privileges, Defendants argue the evidence must be suppressed.  However, Defendants request an evidentiary hearing so that they can question government investigators and Terrebonne about the interviews.[19] Defendants assert that the record lacks sufficient information for Defendants to determine what remedies they may be entitled to, or for the Court to make a fully informed decision on the issues raised.[20]  Defendants assert that the evidence should be suppressed following the hearing.

The Government opposes the Motion, asserting that it should be denied because neither the attorney-client privilege nor the work product doctrine apply.[21]

---

[17] *Id*. at pp. 4, 5 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 194-95, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).
[18] R. Doc. 159-1 at p. 5.
[19] *Id*. at p. 6.
[20] *Id*.
[21] R. Doc. 174.

The Government contends that Terrebonne prepared spreadsheets with estimates of the potentially stolen funds when he was asked to calculate the money missing from stores managed by two people Brothers Food Mart suspected of theft.[22]    The Government asserts that during the meeting in question, an issue other than the suspected theft was discussed – the payment of cash wages to workers.[23]    The Government argues that, as the parties invoking the privileges, Defendants have failed to carry their burden of providing sufficient facts for the Court to determine whether the privileges apply in this case.[24]    The Government claims that Defendants summarily state, without factual or legal bases, that the October 19, 2016 memorandum of interview provides prima facie evidence that the communications at the meeting were privileged and that Terrebonne's spreadsheets were work product, that each element of the attorney-client privilege is met, and that it is clear that Terrebonne was creating protected work product.[25]    The Government argues that Defendants fail to provide, as they must, detailed affidavits or other comparatively reliable and sufficient evidence to establish, in this highly fact-specific inquiry, that every element of the attorney-client privilege and work product doctrine is satisfied.[26] Because any ambiguities regarding whether the elements of a privilege have been

---

[22] R. Doc. 174 at p. 2 (*citing* R. Doc. 159-2 at p. 5, ¶¶ 1-5, 7-10; p. 9, ¶ 1; p. 11, ¶ 3).

[23] R. Doc. 174 at p. 2 (*citing* R. Doc. 159-2 at p. 3, ¶ 13; p. 7, ¶ 18).

[24] R. Doc. 174 at p. 3 (citing *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985)).

[25] R. Doc. 174 at p. 3.

[26] *Id*. (citing *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004); *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, Civ. A. No. 02-1133-D-M2, 2007 WL 9700756, at *5 (M.D. La. Apr. 9, 2007)).

met must be construed against the party claiming the privilege, the Government asserts the Motion should be denied.[27]

The Government further asserts that to be protected by the attorney-client privilege, the communications during the meeting had to be: (1) confidential; (2) made to a lawyer; and (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.[28]  The Government argues that none of these requirements are met.  The Government claims the communications were not confidential because a third party, an outside accountant, was in the room and disclosures made to an attorney in the presence of third parties are not reasonably expected to remain confidential.[29]  The Government notes that the outside accountant was not hired by outside counsel to provide legal advice.[30]  The Government further asserts that the communications about paying cash wages to workers does not appear to have been made to the attorney, but to the accountant, and their primary purpose does not appear to have been to secure a legal opinion.  Based on the accountant's statement that Hamdan could treat the cash wages to workers as a gift from him to them, the Government asserts the purpose of the communications appears to have been for Hamdan to get tax advice for himself from the company's accountant.[31]

The Government also argues that Terrebonne's spreadsheets are not protected by the work product doctrine because Defendants have failed to prove that the

---

[27] R. Doc. 174 at p. 3 (citing *Equal Emp. Opportunity Comm'n v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017)).
[28] R. Doc. 174 at pp. 3-4 (citing *BDO USA, LLP*, 876 F.3d at 695).
[29] R. Doc. 174 at p. 4 (citing *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981); *United States v. Fortna*, 796 F.2d 724, 730 (5th Cir. 1986)).
[30] R. Doc. 174 at p. 4 (citing *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961)).
[31] R. Doc. 174 at p. 4.

primary purpose of creating the spreadsheets was in anticipation of litigation.[32]  The Government contends that was not the primary purpose of the spreadsheets, as the outside attorney does not appear to have been involved in the creation of Terrebonne's spreadsheets.  The Government notes that although Terrebonne said he was careful with his calculations because he recognized the possibility of litigation, that possibility is inherent in all internal investigations.  The Government argues that the primary purpose of Terrebonne's investigation was to determine whether two managers were embezzling from the company and should be fired, so the primary purpose of the spreadsheets was a business one.[33]  The Government points out that Brothers Food Mart ultimately fired the two managers and although it filed suit against them, the company has not pursued the suit, which has languished.[34]  The Government reiterates that any ambiguities must be construed against Defendants.

The Government further asserts that Defendants are not entitled to an evidentiary hearing because such hearings are only required when a motion alleges sufficient facts which, if proven, would justify relief.[35]  The Government argues that Defendants' allegations that the Government should have concluded that the meeting was privileged, despite the presence of a third party, and that Terrebonne's spreadsheets were work product, even though there was an obvious business purpose for the internal investigation, are not sufficiently definite, specific, detailed and

---

[32] *Id*. at p. 5.

[33] R. Doc. 174 at p. 6 (citing *Elec. Data Sys. Corp. v. Steingraber*, Civ. A. No. 4:02-CV-225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003)).

[34] R. Doc. 174 at p. 6.

[35] *Id*. at p. 7 (citing *United States v. Chaparro-Luna*, 790 Fed.Appx. 560, 563 (5th Cir. 2019)).

nonconjectural to warrant an evidentiary hearing.[36]  The Government notes that Defendants have failed to provide detailed affidavits or other evidence supporting their claim that the meeting was privileged or that the spreadsheets are work product.  Finally, the Government asserts that because Terrebonne's interviews occurred well before the Superseding Indictment was returned, they cannot constitute a violation of Defendants' Sixth Amendment right to counsel.[37]

## II.    LAW AND ANALYSIS

### A. The Attorney-Client Privilege.

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[38]  The Supreme Court in *Upjohn Co. v. United States* recognized that the corporate attorney-client privilege is designed to encourage such frank communication between a corporation and its attorneys to facilitate fully informed legal advice.[39]  The attorney-client privilege applies to communications between a corporate employee and the corporation's attorney if the communication: (1) was made at the direction of the employee's superior; (2) was within the scope of the employee's duties; and (3) was made for the purpose of seeking and rendering legal advice to the corporation.[40]  The

---

[36] R. Doc. 174 at p. 7 (citing *United States v. Guerra*, 605 Fed.Appx. 295, 298 (5th Cir. 2015)).

[37] R. Doc. 174 at pp. 7-8.

[38] *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981)) (internal quotation marks omitted).

[39] *Rush v. Columbus Mun. Sch. Dist.*, 234 F.3d 706 (5th Cir. 2000) (citing *Upjohn*, 449 U.S. at 389-94, 101 S.Ct. 677)

[40] *In re Liprie*, 480 B.R. 658, 663 (W.D. La. 2012) (citing *Upjohn*, 449 U.S. 383, 101 S.Ct. 677). *See, In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789, 796 (E.D. La. 2007) (citation omitted); *Freescale Semiconductor, Inc. v. Maxim Integrated Products, Inc.*, Civ. A. No. A-13-CV-075-LY, 2013

Fifth Circuit has explained that, "(w)hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."[41] "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to apply only where necessary to achieve its purpose."[42] Further, "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof."[43] "A general allegation of privilege is insufficient to meet this burden."[44] According to the Fifth Circuit, ambiguities regarding whether the elements of a privilege claim have been met are construed against the party asserting the privilege.[45]

Here, Defendants assert that, "the October 19, 2016 Terrebonne memorandum of interview provides prima facie evidence that the communications at the meeting were privileged . . . ."[46] Defendants then assert that the communications are privileged because Brothers Food Mart's counsel "was present and acting in that role," the purpose of the meeting was to discuss the alleged theft by two store managers, the meeting concerned company business and, therefore, was within the

---

WL 5874139, at *3 (W.D. Tex. Oct. 30, 2012); *Sims v. Roux Laboratories, Inc.*, Civ. A. No. 06-10454, 2007 WL 2571941, at *2 (E.D. La. Aug. 31, 2007) (citation omitted).

[41] *El Paso Co.*, 682 F.2d at 538 (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)) (internal quotation marks omitted).

[42] *Equal Emp. Opportunity Comm'n v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)) (internal quotation marks omitted).

[43] *BDO USA, LLP*, 876 F.3d at 695 (quoting *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

[44] *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (citing *Nutmeg Insur. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D. La. 1988); *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996)).

[45] *BDO USA, LLP*, 876 F.3d at 695 (citation omitted).

[46] R. Doc. 159-1 at p. 5.

scope of Terrebonne's employment, and Terrebonne knew the purpose of the meeting was to procure legal advice regarding the alleged theft.[47]  The Court finds Defendants' bare allegations, asserted over all of the communications made during the meeting in question, are insufficient to meet their burden of proving the communications are protected by the attorney-client privilege.  Defendants fail to provide *any* information, through detailed affidavits or other evidence,[48] regarding the meeting, including when it occurred or what was discussed and by whom.  The Court finds this lack of information perplexing in light of the fact that *both* Hamdan and Mousa were present at the meeting.[49]  Defendants also fail to cite any legal authority to support their assertion that the memorandum of interview can serve as prima facie evidence that the communications are protected by the attorney-client privilege.

The Court further finds that the four memoranda of interview relied upon by Defendants are insufficient to establish that the elements of the attorney-client privilege are met.  Critically, there is no indication from the four memoranda that any statements were made during the meeting to or by Brothers Food Mart's counsel for the purpose of obtaining legal advice, nor have Defendants provided the Court with any such information.  The memoranda also provide no information regarding

---

[47] *Id.*

[48] *See*, *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, Civ. A. No. 02-1133-D-M2, 2007 WL 9700756, at *5 (M.D. La. Apr. 9, 2007) (citing *Navigant Consulting, Inc.*, 220 F.R.D. at 473-74) ("In other words, the proponent of the attorney-client privilege must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists."); *Navigant Consulting, Inc.*, 220 F.R.D. at 473–74 (finding that the proponent of the attorney-client privilege "must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists.") (citing *Caruso v. The Coleman Co.*, Civ. A. No. 93-CV-6733, 1995 WL 384602, at *1 (E.D. Pa. June 22, 2995)).

[49] *See*, R. Doc. 159-1 at pp. 2-3 (*quoting* R. Doc. 159-2 at p. 3, ¶ 13).

whether Hamdan, Mousa or Terrebonne made any statements to Brothers Food Mart's counsel at the direction of their superior concerning matters pertinent to their job duties.[50]   According to the October 19, 2016 memorandum of interview, Terrebonne stated that he attended a meeting with Mousa, Hamdan, Brothers Food Mart's CPA, Jim Butler, and Brothers Food Mart's attorney, Joe Dirosa, concerning "the theft case involving Brothers manager's Tony and Ricky," and that Terrebonne "remembers the 'issue' of booking cash wages as owner's distributions being discussed at the meeting."[51]   Defendants provide no information regarding any specific statements made during the meeting.  The Court finds that the October 19, 2016 memorandum of interview suggests only that the individuals at the meeting discussed the alleged theft by two Brothers Food Mart managers and the fact that Brothers Food Mart was paying cash wages to workers.  Because no specific communications are mentioned, it is unclear from the October 19, 2016 memorandum what was discussed during the meeting.

The August 15, 2018 memorandum of interview likewise provides that the meeting in question concerned the payment of cash wages to workers.[52]  Unlike the October 19, 2016 memorandum of interview, however, the August 15, 2018 memorandum mentions a specific statement made during the meeting.  According to the memorandum, "Terrebonne remembers Butler telling everyone that Brothers was going to have to book the cash wages as if they were a gift or as an owner's withdrawal

---

[50] *In re Liprie*, 480 B.R. 658, 663 (W.D. La. 2012) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

[51] R. Doc. 159-2 at p. 3, ¶ 13.

[52] *Id*. at p. 7, ¶ 18.

from HAMDAN," after which "HAMDAN walked over to Butler and kissed him on the forehead."[53]   The August 15, 2018 memorandum further provides that, "Terrebonne stated that this appeared to be Butler's solution on how to handle the payments since the cash wages had already been paid out.  At the meeting, Butler stated the cash wages occurred in the past and that Brothers should stop paying the cash wages."[54]  Neither the October 4, 2018 nor the October 9, 2018 memoranda of interview mention the meeting in question.[55]  The only communication that the Court is aware of was made by the accountant for Brothers Food Mart to everyone present at the meeting.  Thus, the communication was not made to Brothers Food Mart's counsel, nor was it made for the purpose of obtaining legal advice.  The Court finds that the communication constitutes, at most, accounting advice offered by Butler to Hamdan and/or Mousa and, as such, is not protected by the attorney-client privilege.

Although Defendants allege that Terrebonne "knew the purpose of the communications was to procure legal advice related to the theft case," Defendants never assert that any communications during the meeting were actually for the purpose of obtaining or procuring legal advice.  Instead, Defendants seem to imply that it is sufficient that corporate counsel "was present and acting in that role."[56] Such a finding would fly in the face of reason, and of the law.  The Fifth Circuit has held that the mere presence of an attorney is not sufficient to insulate a meeting from

---

[53] *Id*. at p. 7, ¶ 18.
[54] *Id*.
[55] *Id*. at pp. 9-13.
[56] R. Doc. 159-1 at p. 5.

discovery, as "the privilege protects only those communications made for the purpose of obtaining legal advice."[57]

The Court further finds that Defendants have failed to show that any communications made during the meeting were confidential in light of the presence of Jim Butler, Brothers Food Mart's CPA.[58]  The Fifth Circuit has explained that the attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship, and that the privilege is waived by disclosure of confidential communications to third parties.[59]  The Court recognizes, however, that the privilege extends "to a client's or attorney's representatives to the extent that the presence of those representatives furthers the provision of legal services to the client."[60]  In *United States v. Kovel*, the Second Circuit Court of Appeals squarely addressed whether communication between a lawyer's client and an accountant hired by the lawyer is covered by the attorney-client privilege.[61]  Comparing the accountant to a translator, the Second Circuit concluded that, "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.  If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's no

---

[57] *Rush v. Columbus Mun. Sch. Dist.,* 234 F.3d 706 (5th Cir. 2000).

[58] R. Doc. 159-2 at p. 3, ¶ 13.

[59] *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1986); *See also, Benson v. Rosenthal*, Civ. A. No. 15-782, 2016 WL 1046126, at *5 (E.D. La. Mar. 16, 2016) ("When a communication between attorney and client occurs in the presence of a third party who is not the attorney's client, the communication generally is not confidential and the privilege is waived.") (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999); *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).

[60] *In re Liprie*, 480 B.R. 658, 663 (W.D. La. 2012) (citations omitted).

[61] 296 F.2d 918 (2d Cir. 1961).

privilege exists."[62]  As recognized by our sister court, "The Fifth Circuit has cited *Kovel* with approval in the context of a case applying the federal common law of attorney-client privilege, and courts in this Circuit have relied on *Kovel* when determining whether communications with third parties are privileged."[63]

Here, the four memoranda of interview indicate that any statements made during the meeting at issue concerned the alleged theft of money by two Brothers Food Mart managers and Brothers Food Mart treating cash wages as owner's distributions.[64]  The only communications specifically mentioned by Terrebonne in the memoranda of interview are statements made by Butler, Brothers Food Mart's CPA, to "everyone" present.[65]  These include Butler's statement that Brothers Food Mart needed to treat the cash wages paid to managers and undocumented workers as a gift or an owner's withdrawal from Hamdan, Butler's statement that the cash wages were paid in the past, and Butler's statement that Brother's Food Mart should stop paying cash wages.[66]  Defendants offer no information to suggest that the communications were made to Joe Dirosa, Brothers Food Mart's counsel, to obtain legal advice on behalf of the company, or that they were made to assist Dirosa in providing such legal advice.  Defendants also have not alleged that Butler, Brothers

---

[62] *Id.* at 922 (internal citations omitted).

[63] *Firefighters' Retirement Sys. v. Citco Group Limited*, Civ. A. No. 13-373-SDD-EWD, 2018 WL 2323424, at *5 (M.D. La. May 22, 2018) (citing *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982); *In re Consolidated Litigation Concerning International Harvester's Disposition of Wisconsin Steel*, Civ. A. Nos. 81 C 7076, 82 C 6895, 85 C 3521, 666 F.Supp. 1148, 1156-57 (N.D. Ill. July 17, 1987); and comparing *Ferko v. Nat'l Assoc. for Stock Car Auto Racing, Inc.*, Civ. A. No. 4:02-CV-50, 518 F.R.D. 125, 135 (E.D. Tex. Oct. 7, 2003) with *King v. Univ. Healthcare Sys., LC*, Civ. A. No. 08-1060, 2009 WL 10679780, at *5 (E.D. La. Jan. 15, 2009)).

[64] R. Doc. 159-2 at p. 3, ¶ 13 and at p. 7, ¶ 18.

[65] *Id.* at p. 7, ¶ 18 ("Terrebonne remembers Butler telling everyone that . . . .").

[66] *Id.*

Food Mart's CPA, was hired by Dirosa to assist him in providing legal advice. In fact, Defendants offer no explanation for Butler's presence at the meeting.

Based on the foregoing, the Court finds that Defendants have failed to show that the attorney-client privilege protects the communications made during the meeting in question. The Motion is therefore denied as to Defendants' request to suppress information obtained by the Government in violation of the attorney-client privilege.

### B. The Attorney Work Product Doctrine.

The Fifth Circuit has explained that, "The work product privilege is very different from the attorney-client privilege."[67] While the attorney-client privilege "exists to protect confidential communications and to protect the attorney-client relationship," the work product doctrine exists "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent."[68] Citing the same case, the parties agree that the work product privilege applies to documents prepared in anticipation of litigation.[69] According to the Fifth Circuit, the privilege can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.[70] In determining the primary motivation for the creation of a document, courts consider a variety of factors,

---

[67] *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

[68] *Id.* (citing *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

[69] R. Doc. 159-1 at p. 4 (quoting *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000); R. Doc. 174 at p. 5 (citing *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d at 593).

[70] *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d at 593 (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)) (internal quotation marks omitted).

including "the retention of counsel and his involvement in the generation of the document and whether it was routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance."[71]  Documents prepared in the ordinary course of business are not covered by the work product doctrine.[72]

The evidence before the Court does not support a conclusion that anticipation of litigation was the primary motivating purpose behind Terrebonne's spreadsheets. Defendants assert that Terrebonne prepared the spreadsheets to determine the amount of money the two Brothers Food Mart managers allegedly stole from the company, and that they were prepared "to help pursue civil or criminal litigation against those managers."[73]  Defendants, however, do not allege that litigation against the two store managers was imminent, or even contemplated, when Terrebonne prepared his spreadsheets.  Nonetheless, Defendants assert that it is "clear" that the spreadsheets are protected by the work product doctrine because Terrebonne created the spreadsheets "at the direction of Brothers' counsel."[74]  Defendants, however, fail to provide any information to support that conclusory statement.

The Court further finds that the four memoranda of interview do not support Defendants' assertion that the spreadsheets were prepared at the direction of counsel.  The October 19, 2016 memorandum of interview expressly states that,

---

[71] *Costly v. Nissan Motor Company, Ltd*, Civ. A. No. 14-244-SDD-EWD, 2016 WL 3460401, at *4 (M.D. La. June 21, 2016) (quoting *Colony Ins. Co. v. NJC Enterprises, LLC*, Civ. A. No. 09-763, 2013 WL 1335737, at *2 (M.D. La. Apr. 1, 2013)) (internal quotation marks omitted).

[72] *El Paso Co.*, 682 F.2d at 542 (quotation and internal quotation marks omitted).

[73] R. Doc. 159-1 at pp. 3, 5.

[74] *Id*. at p. 5.

"Terrebonne created spreadsheets in order to analyze and help him understand how the Brothers stores were handling cash."[75] That statement suggests that Terrebonne, as the Chief Financial Officer of Brothers Food Mart, took it upon himself to create the spreadsheets to try to track the cash wages being paid to store managers and workers. The August 15, 2018 memorandum of interview similarly states that, "Terrebonne confirmed he prepared the spreadsheets in order to calculate money missing from Brothers Food Mart (Brothers) stores which were managed by Imad Majid (Tony) and Raed Abdelmajeed (Ricky). Brothers had accused Tony and Ricky of stealing money from the stores and Terrebonne was attempting to calculate the stolen funds."[76] The October 4, 2018 and October 9, 2018 memoranda of interview likewise provide that, "Terrebonne created the spreadsheets in order to help document missing cash from Brothers stores managed by Raed Abdelmajeed (Abdelmajeed) and Imad Majid (Majid) who were accused of stealing cash from Brothers stores."[77] While both memoranda state that the spreadsheets were prepared "as part of a theft case" against the two managers,[78] the word "case" appears to refer generally to the internal investigation of the two store managers. Defendants have not provided any information to suggest that a theft case was pending against the two store owners, or that litigation was even contemplated at that time.[79]

---

[75] R. Doc. 159-2 at p. 3, ¶ 8.
[76] *Id*. at p. 5, ¶ 1.
[77] *Id*. at p. 11, ¶ 3; *See, Id*. at p. 9, ¶ 1.
[78] *Id*. at p. 9, ¶ 1 and at p. 11, ¶ 3.
[79] The Court notes that the Government has alleged that Brothers Food Mart ultimately fired the two managers and filed suit against them, but did not pursue the case, which has since languished. R. Doc. 174 at p. 6. Neither party has provided the Court with information or documentation to confirm that assertion.

It appears to the Court that the evidence before it supports that Terrebonne prepared the spreadsheets to determine whether two store managers were stealing from the company, as part of an internal investigation, and to aid the company in making a business decision regarding whether the managers should be terminated. Defendants rely heavily on the August 15, 2018 memorandum of interview to support their claim that the spreadsheets are protected by the work product doctrine because it states that, "Terrebonne realized how important his calculations were because someone could be going to jail based on the figures. Terrebonne made an effort to correctly account for all of the funds going out of the stores managed by Tony and Ricky."[80] These statements, however, do not show that the primary motivation behind creating the spreadsheets was the anticipation of litigation. Instead, they show that Terrebonne was careful with his calculations because he recognized the potential for future litigation depending on the amount of money involved. But that does not change the primary purpose behind the spreadsheets. As explained by our sister court, "In the realities of today, investigation of corporate wrongdoing are [sic] routine, expected and necessary for many reasons, including protecting shareholders, assessing losses, and the prevention of future corporate wrongdoing."[81] The Court finds that the spreadsheets were prepared in the ordinary course of business and therefore, are not covered by the work product doctrine. Accordingly, the Motion is

---

[80] R. Doc. 159-2 at p. 5, ¶ 2.
[81] *Electronic Data Sys. Corp. v. Steingraber*, Civ. A. No. 4:02 CV 225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003).

denied to the extent Defendants seek to suppress evidence obtained by the Government in violation of the attorney work product privilege.

### C. Defendants' Request for an Evidentiary Hearing.

Finally, the Court addresses Defendants' request for an evidentiary hearing "to allow them to question government investigators and Terrebonne about these interviews."[82]   Defendants claim that, "The current record lacks sufficient information to allow defendants to assess what remedies they may be entitled to as a result of the government's conduct, nor is it sufficiently developed to allow the Court to make a fully informed decision on the issues raised in this motion."[83]  Defendants cite no legal authority to support their request.

Under Fed. R. Crim. P. 41(e), an evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact.[84] "Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief."[85]  In the Fifth Circuit, "Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented."[86]   Thus, "General or conclusionary assertions, founded upon mere

---

[82] R. Doc. 159-1 at p. 6.
[83] *Id.*
[84] *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citing *In re Searches and Seizures Conducted, Etc.*, 665 F.2d 775 (7th Cir. 1981)).
[85] *Harrelson*, 705 F.2d at 737 (citing authority).
[86] *Id.* (quoting *United States v. Poe*, 462 F.2d 195, 197 (5th Cir. 1972)) (internal quotation marks omitted).

suspicion or conjecture, will not suffice."[87]  The Fifth Circuit has recognized that, "Inherent in these flexible guidelines is a judicial recognition that the determination of whether a hearing is required [on a motion to suppress] is necessarily dependent upon the particular facts which attend a particular request, and the district court is properly left with a certain amount of discretion in this regard."[88]

The Court finds that Defendants have failed to show that they are entitled to an evidentiary hearing on the instant Motion to Suppress.  Defendants' conclusory allegations that all of the statements made during a meeting attended by Terrebonne, Hamdan, Mousa, Jim Butler and Joe Dirosa are protected by the attorney-client privilege, without providing any information about the statements made, to whom, or the purpose of those statements, are not "sufficiently definite" to enable the Court to conclude that a substantial claim is presented.  This is especially true where such bare allegations were made despite the fact that *both* Hamdan and Mousa were present at the meeting.  The Court reaches the same conclusion regarding Terrebonne's spreadsheets.  The four memoranda of interview submitted with Defendants' Motion indicate that the spreadsheets were prepared for a business purpose and not in anticipation of litigation.  The Court notes that Defendants did not file a reply brief to address the Government's arguments or to provide additional information in support of their arguments, nor have they sought to supplement their

---

[87] *Harrelson*, 705 F.2d at 737 (citing authority).
[88] *Id*. (quoting *United States v. Losing*, 539 F.2d 1174, 1178 (8th Cir. 1976)) (internal quotation marks omitted).

Motion with additional information. The Court, therefore, declines to hold an evidentiary hearing.

## III.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Joint Motion to Suppress Evidence Obtained in Violation of the Attorney-Client Privilege and for an Evidentiary Hearing[89] is **DENIED**.

New Orleans, Louisiana, May 13, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[89] R. Doc. 159.